Case 2:18-cv-09873-CCC  Document 13-5  Filed 12/05/18  Page 1 of 36 PageID: 1140

1-S-960-94-T4

# 1T

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION:  BERGEN COUNTY
INDICTMENT NUMBER:  S-524-88
APP. DIV. NUMBER:  5960-94-T4

STATE OF :

                    PLAINTIFF,

      VS

MARTIN BASKERVILLE,

                 DEFENDANT.

                         TRANSCRIPT OF
                          PROCEEDNGS
                          (SENTENCE)

------------------------------------------

B E F O R E:

        HON. TIMOTHY J. SULLIVAN, J.S.C.
        BERGEN COUNTY COURTHOUSE
        HACKENSACK, NJ, 07601
        AUGUST 25, 1993

A P P E A R A N C E S:

        MARK MUSELLA, ESQ.
        Assistant Prosecutor
        For the State

        ALBERT HENDRICKSON, ESQ.
        Assistant Deputy Public Defender
        For the Defendant

TRANSCRIPT ORDERED BY:  Lisa Lynch

TRANSCRIPT PREPARED BY:  Christopher J. Rossi
                        Official Court Reporter
                        Hudson County Courthouse
                        Jersey City, NJ, 07306
                        201-795-6707

COMPUTER AIDED TRANSCRIPTION

sentence                                    1

1          THE COURT:  State ready, Counsel?

2          MR. HENDRICKSON:  Yes, Judge.

3          MR. MUSELLA:  Yes, your Honor.  Good morning, Judge.

4  Assistant Prosecutor Mark Musella on behalf of the State of New

5  Jersey.  Your Honor, this is the matter of State of New Jersey

6  vs Martin Baskerville on indictment S-524 of the '88 term.  Your

7  Honor, at this time the State moves the sentence of Martin

8  Baskerville.

9          MR. HENDRICKSON:  Albert Hendrickson on behalf of the

10  Defendant, Martin Baskerville.

11          THE COURT:  Mr. Hendrickson, have you had an

12  opportunity to review the pre-sentencing report?

13          MR. HENDRICKSON:  Yes, I have.

14          THE COURT:  Have you discussed it?  Mr. Baskerville,

15  you reviewed it?  Mr. Baskerville, have you?

16          MR. BASKERVILLE:  Yes, I have.

17          THE COURT:  All right.  Mr. Hendrickson, are there any

18  changes, deletions, or corrections?

19          MR. HENDRICKSON:  Yes, your Honor.  On the pre-sentence

20  investigation report, I don't recall the exact page, but it

21  indicates that he's been in New York in custody there since

22  1987.  That's not true.  He went to New York from New Jersey in

23  1989 and was tried in New York in 1989, in September, and

24  sentenced in September of 1990.  So that he has been in the Dana

25  Morrow State Prison (phonetic) in Clinton, New York, since

1    September of 1990. He has been in custody since his arrest on

2    this matter, but he was not in New York in that period of time.

3                THE COURT:  Well, he was inprisoned in New York when?

4                MR. HENDRICKSON:  In September of 1990. That was when

5    he was sentenced.

6                THE COURT:  But he was on trial, he went on trial

7    there, didn't he?

8                MR. HENDRICKSON:  Yes, he went in New York in 1989, was

9    tried, apparently, in 1990 and sentenced.  Is that correct?

10   November 3rd, 1990, was when he was--

11               THE COURT:  He was in Bergen County Jail.

12               MR. HENDRICKSON:  Since, I believe, the 26th of

13   December.

14               THE COURT:  25th they have him down there.  He was

15   visiting, supposed to be Christmas Day, I think he was visiting

16   Lisa, that's when he was apprehended, so he gets credit for that

17   day.  He stayed in prison until 1988.  Is that correct?

18               MR. HENDRICKSON:  Yes, Judge, until--

19               MR. BASKERVILLE:  March of '89.

20               MR. HENDRICKSON:  Until March of 1989.

21               THE COURT:  March 7, 1988, it has down here.

22               MR. BASKERVILLE:  March of '89.

23               THE COURT:  I remember, Mr. Baskerville, I think you

24   were on bail, you bailed out.

25               MR. BASKERVILLE:  No, I didn't.

sentence                                3

1       THE COURT:  You were in jail.

2       MR. BASKERVILLE:  I posted a $10,000 bail.  No, a

3   $25,000 bail, March, I think it was March 11th of '89, and I was

4   re-arrested June 28th, '89.  Not '88, '89.  I never made no

5   bail.  When I finally made the bail is when bail was reduced and

6   I went out in March of '89, not '88.

7       THE COURT:  We're going to have to get that straight,

8   make sure we have it right.

9       MR. BASKERVILLE:  'Cause, if that was the case, I

10  wasn't even indicted, then March 11th I was no billed.  I never

11  made bail from there, I still had three cases open.

12      THE COURT:  We'll have to find out.

13      MR. BASKERVILLE:  'Cause December 25th, when I got

14  locked up I wasn't even hardly arraigned, March of '88, on the

15  cases yet.  It hadn't gone to the Grand Jury yet, so I didn't

16  get out in '88, it was the following year.  I did over 18 months

17  in that county jail, I know that for sure, right upstairs.

18      THE COURT:  All right, what I'm going to do, Mr.

19  Hendrickson, is reserve on the jail credit that's due Mr.

20  Baskerville until we get a report as to his-- When he was

21  released, there seems to be an error in here.  I'm not going to

22  make a decision on that and he's presented some information here

23  that this may not be accurate.  So I'm going to wait on that,

24  but we'll proceed to sentencing.  Anything else?

25      MR. HENDRICKSON:  No, other than the question of the

sentence                                                                4

1    jail credits, Mr. Baskerville does not advise me that there are

2    any other errors in the pre-sentence report.

3              THE COURT:  I'll hear on sentencing, Mr. Hendrickson.

4              MR. HENDRICKSON:  Very well.  There might be a question

5    on gap time.

6              THE COURT:  That's another state, there's a case right

7    on it.  He's sentenced in another state, I'm having a case like

8    that that involved someone is serving time in another case, in

9    another state, he's not entitled to gap time.

10             MR. HENDRICKSON:  Unfortunately, that's also my

11   understanding.  Your Honor, Mr. Baskerville--

12             MR. MUSELLA:  Judge, I hate to interrupt Mr.

13   Hendrickson, but I think under the court rules the State has

14   filed an extended term papers, your Honor, and I understand a

15   hearing must be held before we can proceed to sentencing.

16             THE COURT:  Yes.

17             MR. MUSELLA:  I just want to, I guess, perhaps--

18             THE COURT:  I'll address the record.  There has been an

19   application made by the State for an extended term and in

20   hearing your remarks, Mr. Hendrickson, it's the State's burden

21   to go forward first.

22             MR. MUSELLA:  Judge, I think just a hearing.  At the

23   hearing two things must be decided.  (A) I think the Court must

24   decide whether the State has complied with the procedural

25   aspects of the extended term, that is whether Mr. Baskerville

sentence                                              5

1   qualifies for an extended term.  That's under 2C:44-6e, your

2   Honor.

3          At the hearing we must establish that he is in fact

4   eligible for an extended term, what grounds we're moving

5   forward.  So, perhaps, your Honor, I can just lay the

6   groundwork.  First and foremost, I did file the papers within 14

7   days of the conviction of Mr. Baskerville.  That must be done

8   according to court rule, I have it written out, Judge, if you

9   just bear with me, Judge, pursuant to court rule 3:21-4d

10         I did file the extended term paper within 14 days, I

11  served a copy of the papers on the Court, I served a copy of the

12  papers on Mr. Hendrickson.  Mr. Baskerville was also personally,

13  hand delivered a set of the papers in the Bergen County Jail and

14  the original was filed with the County Clerk.  They're time

15  stamped, July, looks like 14th, 1993.

16         This was-- All these extended term papers were

17  personally served on the aforementioned individuals.  Your

18  Honor, that is in keeping with the court rule.  I think that,

19  again, Mr. Baskerville was convicted on July 1st, 1993, so the

20  State did in fact file the papers within 14 days.

21         Next point, your Honor, the extended term papers set

22  forth the fact the State is seeking an extended term against Mr.

23  Baskerville on the basis that he is a persistent offender.

24  Persistent offender criteria is set forth in 2C:44-3a.  The

25  criteria, your Honor, are as follows:  First, the State must

1    show that Mr. Baskerville was at least 21 years old at the time

2    of the crime in the present case. PSI, your Honor, indicates

3    that Mr. Baskerville is presently 38 years old, your Honor, the

4    crimes allegedly occurred in 1987, he was over the age of 21 at

5    the time.

6           Your Honor, the second criteria requirement is that he

7    was convicted of two separate crimes on at least two separate

8    occasions within 10 years of the conviction. Your Honor, both,

9    again looking at the PSI, Mr. Baskerville has at least two prior

10   indictable convictions. One was for theft, he received two

11   years Probation from Judge Madden.

12          The arrest was on 12/26/86 and he was convicted and

13   sentenced, your Honor, on January-- Strike that. On December

14   3rd, 1986, your Honor. The arrest was on January 25th, 1986, he

15   was sentenced-- And sentenced in 1986. The PSI does not make

16   clear that date.

17          Nevertheless, your Honor, on a-- Subsequent to the

18   crime in question, the arrest for the crime in question, he was

19   also arrested in New York for felony murder and robbery, first

20   degree, on August 15th, 1989, and he was in fact convicted on

21   that crime, your Honor, and he received 16 years to life. That

22   is subsequent to the crime in question, however, your Honor, it

23   still qualifies as a prior conviction. The case on point with

24   regard to that, if Mr. Hendrickson should raise that argument,

25   is State vs Mangrella 214 New Jersey Super. at 437.

Case 2:18-cv-09873-CCC Document 13-5 Filed 12/05/18 Page 8 of 36 PageID: 1147

1       THE COURT: How about State vs Mangrella at 214 New

2   Jersey Super. 437 Appellate Division 445, have you read that

3   case?

4       MR. MUSELLA: Yes, your Honor, I just cited that to the

5   Court.

6       THE COURT: What about it?

7       MR. MUSELLA: That case basically states that

8   although-- In effect, what that case states is Mr. Baskerville

9   has a prior conviction for an arrest and a crime that occurred

10  before the present case which he's being sentenced today and

11  we're counting that as a prior conviction. Also he has a

12  subsequent conviction for a crime which occurred after the date

13  of the crime in this case, however, Mangrella says since he's

14  sentenced your Honor can use that as a prior conviction and

15  count that as a second conviction for purposes of extended term

16  sentencing.

17      THE COURT: Suppose it's on appeal?

18      MR. MUSELLA: Your Honor, it's a final conviction, as

19  far as I know.

20      THE COURT: Sentencing Judges may consider any judgment

21  entered prior to sentencing, which is what you're saying.

22      MR. MUSELLA: Right.

23      THE COURT: Provided there is no pending appeal or

24  right of direct appeal that may not be expired. Pending appeal,

25  I think the case says that, Mangrella. Get me Mangrella 214 New

1    Jersey Super. 437. My understanding of the law is that even

2    though he has been convicted of the murder charge in New York,

3    if it's under appeal, my understanding--

4             MR. HENDRICKSON:  It is, your Honor, that was an issue

5    at Sands prior to trial.

6             THE COURT:  That's why I have in my mind, in the Sands

7    issue I declined to allow the State to use that if Mr.

8    Baskerville took the stand because it had been under appeal.

9    The same issue is raised now.  The Court, my understanding of

10   the law, is prohibited from using that for purposes of extended

11   term.  I can use it for purposes of sentencing.

12            MR. MUSELLA:  Yes.

13            THE COURT:  Mr. Musella, because the law is clear on

14   that, I can consider it even though it's under appeal for

15   purposes of sentencing, but for purposes of an extended term, if

16   it's under appeal I may very well be prohibited.  Let me just

17   check the case again here.

18            It's clear "accordingly, we hold that the persistent

19   offender criteria embodied in 2C:44-3a requires neither offenses

20   to have occurred nor judgments to have been entered prior to the

21   offense then before the Court for sentencing."  Which is what we

22   have here.  "And, provided that the other criteria embodied in

23   2C:44-3a are satisfied, that the Trial Court can consider any

24   'judgment' entered prior to sentencing provided that there is no

25   pending appeal or right of direct appeal."

1    I can consider it for purposes of persistent offender

2    and in this case my understanding is that the particular offense

3    that the State is relying upon, which is the murder conviction

4    in the State of New York, which is referred to in paragraph five

5    of the affidavit that has been submitted by Mr. Musella, that

6    Mr. Baskerville was convicted of murder in the second degree and

7    sentenced to 16 years to life in New York State Prison and seven

8    years to 21 years for, I guess first degree robbery and second

9    degree robbery, five years running concurrent to each other.  So

10    my understanding of the law is that I cannot consider that--

11                MR. MUSELLA:  Okay, your Honor.

12                THE COURT:  For persistent purposes.  I can consider it

13    for purposes of sentencing.

14                MR. MUSELLA:  Your Honor, I would have an application

15    then at this time.  As I indicated at trial, your Honor, the

16    only information I received with regard to the appeal was that a

17    notice was filed.  Your Honor, he was convicted in 1990, this

18    was a 1989 crime, he has never filed any briefs, nothing further

19    has been done.

20                I do not know the status of the appeal at this time,

21    your Honor, and I would like time to inquire into that, perhaps

22    if I can take a ride over to New York personally because I

23    called over there on several occasions and I did not receive

24    satisfaction with regard to the status.  I think if Mr.

25    Baskerville has filed no briefs and nothing has moved forward

1    with regard to that appeal the State can certainly inquire or
2    make recommendations to New York authorities to dismiss the
3    appeal.

4         THE COURT:  Only if there's-- An appeal has been
5    dismissed with prejudice will I consider that.  And the fact
6    that he hasn't filed briefs and the fact that New York has not
7    gotten around to put it from here to there, I mean, that's the
8    system, we knew this back in July when the Prosecutor knew-- In
9    fact, the same argument you raise now you raised at that time,
10   saying we can use it because he didn't file briefs.  I said
11   unless it's dismissed with prejudice he is, under that rule,
12   he's protected and that's the same thing I would say here.

13        Unless we can find or you can produce, and you should
14   have produced it today, today's the day of sentencing, that he
15   is a persistent offender and that the appeal protection that he
16   had at the time of trial, and you have information to present to
17   this Court that that appeal has been dismissed with prejudice
18   and he has no longer that right, I'm not going to accept it, I'm
19   not going to give you time to get it.

20        An extended term is a very serious request by the
21   Prosecutor.  I can't even give an extended term without your
22   request, in most cases, so it's a burden that's on the State and
23   the State had chose to do it and the file is timely for this
24   request, I have no quarrel with that.  But I do find that there
25   has been no proof submitted by the State that the murder

1    conviction in New York is no longer under appeal, so I'm not

2    going to give you more time. We will proceed, unless the

3    State--- Unless Mr. Hendrickson has anything he wants to say.

4              MR. HENDRICKSON: No, your Honor, I agree with your

5    ruling.

6              THE COURT: You don't want to give him any more time to

7    look for it.

8              MR. HENDRICKSON: No.

9              THE COURT: Without the murder charge in New York is

10   your application as a persistent offender viable? There's only

11   one conviction in the past and maybe two, but they were both

12   sentenced on the same day, is the way I see it. I think West

13   criteria is that there has to be two. The Defendant is a

14   persistent offender if he was convicted on two occasions at

15   different times, which, I guess, he could technically-- We could

16   consider that application, that is the theft charge in January

17   25, 1989, before Judge Madden, he was sentenced on that on the

18   very same day. It seems like it's the possession of a forged

19   check and larceny by deception before Judge Madden. He received

20   two years Probation. It seems that they were both at the same

21   day that he was sentenced, on April 24, 1987. Do you see that?

22             MR. MUSELLA: Yes, Judge.

23             THE COURT: I think they were at the same time. That

24   certainly is a consideration the Court will make. After that

25   the next indictable offense would be the one that's presently

1   before us and then after that the next one would be the murder

2   conviction that is under appeal. So to cut through the maze, I

3   do not find that the Defendant is eligible for or fits the

4   criteria for an extended term. Now we'll proceed with the

5   sentencing.

6           MR. HENDRICKSON: May it please the Court, your Honor,

7   Mr. Baskerville stood trial before you in July and your Honor is

8   entirely familiar with the facts as they were developed at the

9   trial. I think also your Honor's familiar with Martin and I

10  think it would be safe to say that he's definitely a type A

11  personality, rather a hyper individual, but, Judge, he's not

12  here to be sentenced because he's a hyper individual. He's here

13  to be sentenced for a crime that the Jury found him guilty of

14  committing.

15          It's a little bit different in this situation, when you

16  go over some of the aggravating and mitigating factors because

17  in most instances we have a client who's not in jail or has a

18  relatively short sentence and one can always say that certainly

19  there's a risk that he would commit another crime. But

20  notwithstanding the fact that his felony murder conviction is on

21  appeal, he's serving a rather long sentence, 16 years to life.

22  So that, at age 38, the likelihood of his committing another

23  crime is significantly diminished in view of the time that he's

24  facing in jail at this point and he hasn't had a reversal of his

25  conviction for a new trial. So I think that at this point one

1   can say that there's a significant likelihood that he's going to

2   be spending a long time in jail on that case, so the risk of his

3   committing another crime is significantly diminished, as I had

4   said.

5          The need to deter. Well, your Honor, there's always a

6   need to deter. I think if a person is serving a sentence 16 to

7   life, that does carry a certain amount of deterance with it.

8   Also, as Martin has pointed out, he's completed some courses,

9   narcotics anonymous, behavior modification, things to temper his

10  tendency to resolve confrontations in a violent manner. I think

11  that he has used his time in jail well. Your Honor, I don't

12  think it's difficult to totally eliminate a person's hyper

13  personality, but Martin does seem to have things under control.

14  Therefore, I think that the need to deter him also is somewhat

15  diminished.

16         Now, your Honor, on the mitigating side, I would point

17  out that the things that I've just said should be, although

18  they're not specifically listed as mitigating factors, they're

19  there. Martin has a child who will suffer by a lengthy

20  incarceration.

21         MR. BASKERVILLE:  Two.

22         MR. HENDRICKSON:  Two? All right, two children. He

23  still has a wife that will suffer from his incarceration. Your

24  Honor, I think that the fact that this is a first degree crime

25  in itself carries an extremely heavy sanction and I would ask

1    the Court, based on that, to temper the use of its sentencing
2    authority with mercy. Does it serve a useful purpose to pile
3    on, on top, a heavy burden of the one that's already there?
4            I think, your Honor, that the fact that nobody was
5    seriously injured in this matter, notwithstanding the fact that
6    there was a high speed chase, that a minimal sentence of 10
7    years would be sufficient.
8            Then you must address yourself, I'm sure, to the
9    question of whether it should be concurrent to the New York
10   State sentence or consecutive thereto. Your Honor, as I
11   indicated, at 38 years of age, if he gets out he's going to be
12   somewhere in his 40s, your Honor, I think that the aging process
13   does take over on all of us. I don't feel that it serves a
14   useful purpose, to impose a consecutive sentence on this matter
15   and I would request that the Court not do so.
16           THE COURT: Mr. Baskerville, do you want to say
17   anything?
18           MR. BASKERVILLE: Yes, I do. Can I stand up?
19           THE COURT: Yes, please.
20           MR. BASKERVILLE: First of all, I'd like to apologize
21   to Miss McEwen on behalf of the perpetrator in this crime.
22   Being that the perpetrator couldn't be here today I'm left with
23   the burden of apologizing in his behalf. I'd also like to thank
24   my Lawyer for assisting me to the best of his ability. Your
25   Honor, there are mitigating and aggravating and mitigating

1   factors in this case. Both Mr. Musella took an oath and you

2   took an oath to uphold justice. When a person tells an

3   inconsistent statement or person tells a lie, it's a big

4   difference. And an inconsistent statement can't be proved by a

5   fact, but a perjured statement can be proved by the fact, when

6   the facts are in front of your Honor.

7           I'll state that Officer Ryan, who states that a car was

8   coming at him at 40 miles an hour, he pulled out his gun, he

9   discharged at a car and the bullet is in the right front lower

10  quarter panel, down by the panel, he couldn't have done that

11  shot like that, it's impossible to be behind that car and it

12  coming at 40 and the bullet going at 150.

13          He committed perjury, your Honor, and there's no way

14  physically that bullet could be in the right front door in the

15  lower quarter panel. The only way it could happen is that the

16  bullet was shot from a distance or that the car was still and

17  the distance made the velocity of the bullet drop low.

18          When you look at these pictures, your Honor, there's a

19  clean, straight hole, no angles, no jags. So that was a

20  straight shot and the bullet dropped down there. He was never

21  behind the car. When you tell one lie you have to tell another

22  to cover up for the other lies that you told and this case

23  should have never went before a Jury. It should have been

24  strictly a Judge trial, your Honor, but I couldn't take the

25  chance of going before the Judge because of the statements that

1   you made to me on March 25th and if you look at my sentencing

2   report here, you even told me yourself, you said the case that

3   you have with Marcus Ali and all them has nothing to do with

4   this, but they're right here in my sentencing report today,

5   there's room here, Marcus Ali is in my sentencing report, but

6   they have nothing to do with this, they're not my co-defendants.

7        Under 404(b) law when they indicted me on this offense

8   and the other 13 counts, the other 10 counts that I was no

9   billed on, Lisa Polak is in there at Ebby's Shoes (phonetic),

10  cashing checks.  This prejudiced my indictment.  They should

11  have went with a superseding indictment, but the State was too

12  cheap to do their job, they should have superseded indictment,

13  took it back.

14        They prejudiced my case by presenting me with a case

15  that had nothing to do with this.  I was acquitted on 10 counts,

16  but yet they tell me they're not prejudiced, but if you opened

17  to page right here, here's Marcus Ali again and you're the Judge

18  that sentenced him to 20 to 40, 18 to 36, and at their

19  sentencing, I have news articles that show they implicated me as

20  the shooter.

21        You pointed it out to me, the most significant part.

22  During the summation I learned so much from you because you gave

23  the Jury a test of evidence and you said that this test was if

24  you went to bed at night and you looked out the window and it

25  was snowing, when you woke up in the morning it would be evident

1   that it had snowed all night because there's snow all over the

2   ground.

3           I took the same test and I applied it to you. You made

4   a statement of fact to me and evidence around it that you were

5   the Judge in the trial with Marcus Ali and this-- The same facts

6   that are here, show that it had to be impartial here. A Juror

7   seen me in handcuffs and shackles. Going out. You told the

8   Officers yourself make sure that when you take Mr. Baskerville

9   out today that no one sees him 'cause we don't want another

10  incident like that.

11          The next day my Lawyer's with me, we step outside

12  there, they see me in shackles again. You know what happens?

13  We come back here, you have a cure. You're the Judge that has

14  the cure for this and there's only one cure that could give me a

15  fair trial and that was to put the alternate in who never seen

16  me in the trial, you refused to do that too.

17          Your Honor, I feel that a guilty man would ask for

18  leniency, but in the interest of justice, the facts that remain,

19  I ask that you sentence me in regards to what really happened

20  and now I understand what went on, I know I'm being punished for

21  something other than what's happening right here today. Thank

22  you.

23          THE COURT:  Thank you.  State.  You may be seated, Mr.

24  Hendrickson.

25          MR. MUSELIA:  Judge, I think I will address the

1   aggravating and mitigating factors under 2C:44-1. With regard

2   to what Mr. Baskerville has just put before the Court, all I can

3   say, your Honor, is that the Jury heard the evidence in this

4   case, I think it was a fair trial, I think we did everything to

5   insure that Mr. Baskerville would not be prejudiced. I don't

6   think he was in any way and I think the Jury found him guilty.

7            I think, your Honor, the most damaging evidence against

8   Mr. Baskerville, your Honor, was his denial with regard to being

9   at the scene. Officer Jackson testified, your Honor, before the

10  Jury and I think, quite frankly, the Jury believed her, that she

11  knew Martin Baskerville and she identified Mr. Baskerville as

12  the driver of the car, also as the individual who got out of the

13  car, fled, and wrestled with her.

14           So I think Mr. Baskerville in effect made the Jury make

15  a decision whether they believe Officer Jackson or whether they

16  believe him and they believed Officer Jackson. Once he's placed

17  in that car, your Honor, it's clear he was the individual who

18  robbed Miss McEwen and the individual who drove the vehicle in

19  the direction of the-- Of Officer Jackson and the other Officer

20  from Teaneck.

21           So, your Honor, I think that the evidence was

22  overwhelming with regard to Mr. Baskerville's guilt and again he

23  gets up here today and he denies his guilt and he states he's

24  innocent. Your Honor, the aggravating factors with regard to

25  Mr. Baskerville are clear, your Honor, and I think there are

1     five of them.

2           I think, your Honor, this case, the risk-- Strike that.

3     The nature and circumstances of the offense is relevant. This

4     is a crime of violence, your Honor, but more than that, this was

5     a crime where Mr. Baskerville, in a few minutes, assaulted

6     approximately, your Honor, four separate individuals.

7           Not only did he steal the pocketbook from Miss McEwen

8     in a purse snatch assault type robbery from behind, took the

9     purse and ran, he ran through the alleyway, he was confronted by

10    Officer Jackson, she told him to halt, he got in his car and he

11    drove in the direction of Officer Ryan. And Officer Ryan was

12    clear, your Honor, that he was in fear for his life. He was

13    almost struck, he jumped out of the way, that's why he fired the

14    weapon into the side of the door.

15          So not only did he assault Miss McEwen, he, within a

16    matter of seconds then assaults Officer Ryan. Without giving it

17    a second thought, he drives the vehicle through the streets of

18    Teaneck. We heard, your Honor, there was a high speed chase,

19    total disregard for any pedestrians or anyone in the area, he

20    strikes another police car driven by a third Officer, he

21    continues to drive, he crashed the vehicle, he gets out of the

22    vehicle and now he struggles and wrestles with Officer Jackson,

23    pushes her to the ground and runs. So what we have here is a

24    total disregard for the law.

25          The nature and circumstances of this offense, your

1    Honor, shows an individual who's desperate, an individual who

2    will not be caught, who will not be taken alive, so to speak, at

3    any cost. This is a man who assaulted four people within a

4    matter of seconds and gave it no thought at all, your Honor. It

5    was clear in his mind he was going to get away at all costs, so

6    I would ask you to take that into consideration in this case.

7            I think that the second aggravating factor is the risk

8    that Mr. Baskerville will commit another offense. Your Honor,

9    when Mr. Hendrickson says he's 38, you know, he's serving a long

10   sentence, he's not going to get out 'til he's 40, and we don't

11   have to worry about Mr. Baskerville, your Honor, with all due

12   respect to Mr. Hendrickson, that's rubbish.

13           This man has been involved with the law since 1978. I

14   count, your Honor, a total of 25 arrests. He has disorderly

15   persons convictions, all dealing with theft. We have burglary,

16   we have bad checks, we have stolen property, we have assault, we

17   have larceny, these are all arrests.

18           Many of these, your Honor, were dismissed, many he was

19   acquitted at trial, but there are disorderly persons

20   convictions, four of them, petty larceny in the Bronx, simple

21   assault in Municipal Court, possession of stolen property in

22   Municipal Court, and carrying a concealed weapon.

23           Now, your Honor, that is also something that strikes me

24   when I look at Mr. Baskerville's PSI. He has-- There is mention

25   of a handgun in Baltimore, Maryland, awaiting disposition. We

1   don't have the outcome of that, but he was charged with

2   possession of a handgun, two counts.  Then we have his

3   disorderly persons conviction for carrying a concealed weapon.

4           The case in question, your Honor, deals with an armed

5   robbery, the car in this case was used as a weapon, there can be

6   no doubt that the car was used as a weapon, and, finally, your

7   Honor, we have this murder conviction, felony murder in New York

8   where the individual, it's my understanding, was shot to death.

9   So there is some type of thread of violence running through Mr.

10  Baskerville's past in the PSI and, your Honor, weapons, runs a

11  thread of the use of weapons or possession of weapons also runs

12  through Mr. Baskerville's history in his PSI and his previous

13  involvement with the law.

14          I think that makes him a danger to society and I think

15  that your Honor should strongly weigh the risk that this

16  individual will be engaged in future criminal activity and I say

17  that, your Honor, again because Mr. Baskerville demonstrated

18  that he has no respect for the law and that he would not be

19  caught on that date, so that is a risk he'll engage in future

20  activity if he is allowed to leave prison.

21          As a young man, at 38 is a young man, your Honor.  He

22  is serving a homicide sentence in New York, a lengthy homicide

23  sentence, but, your Honor, that is, according to Mr.

24  Baskerville, that is on appeal and Mr. Hendrickson makes the

25  argument, well, he's going to do a long time for that, but we

1  can't bank on that, your Honor.  I don't think the people of the

2  State of New Jersey should be placed in a position where we're

3  going to give Mr. Baskerville the benefit of the doubt and cut

4  him a break because he's in a long time on something else.

5  We're here today to insure that Mr. Baskerville will not get out

6  of prison as a young man.

7            Your Honor, I'm going to cite to you the prior record,

8  the prior record aggravating factor which I just set forth on

9  the record.  I'm going to also, your Honor, ask you to consider

10  this was a crime committed against Police Officers, that's

11  aggravating factor number eight.  Defendant committed the

12  offense against a Police Officer or other Law Enforcement

13  Official acting in the performance of his duties while in

14  uniform.

15            Your Honor, again, he assaulted three Police Officers

16  within a matter of seconds and did not even flinch, did not even

17  give it a second thought.  Officer Jackson, who knew him, told

18  him to stop, he drove in the direction of Officer Ryan, almost

19  striking him with a vehicle, which was driven at a high rate of

20  speed in reverse and he struck a third or he struck a vehicle

21  driven by a Police Officer, that's a third Police Officer.  So I

22  would ask you to consider aggravating factor number eight.

23            Your Honor, of course, aggravating factor number nine

24  applies, the need to deter this Defendant and others from

25  engaging in this type of activity.  Your Honor, this was

1    reckless activity, there were people, there could have been
2    other innocent people injured because of Mr. Baskerville's
3    conduct that night in his attempt to flee and again, your Honor,
4    I'll state for the record it was an act of a desperate man on
5    that side.

6         Your Honor, mitigating factors in this case, I do not
7    see any. I would go so far as to say, your Honor, the reverse
8    of most of the mitigating factors is in fact the case. Your
9    Honor, we can't say his conduct neither caused nor threatened
10   serious harm or that he didn't contemplate that.

11        It's clear by his actions that night, your Honor, that
12   he knew that he could have caused serious harm to people and he
13   did not care, so that cannot be said. He did not act under any
14   strong provocation. This was a crime of theft, there was a
15   thread of theft through his criminal history here. It's a theft
16   crime, your Honor, he needed money. That is certainly not a
17   strong provocation.

18        No substantial ground tending to excuse his conduct.
19   The victim certainly didn't induce the crime from Mr.
20   Baskerville. There's been no compensation. He stands up today
21   and he says he's sorry for Miss McEwen because someone else
22   robbed her. Your Honor, it's clear that Mr. Baskerville was the
23   perpetrator in this case, so I would also argue he shows no
24   remorse. He gets up here again today and he denies his guilt in
25   the face of overwhelming evidence.

1        The Defendant's conduct was the result of circumstances

2   unlikely to recur, your Honor, again I cited for you that there

3   is a risk of engaging in future activity.  I don't believe that

4   is the case.  His character and attitude, again, your Honor,

5   does not apply.  So I would submit to you there are no

6   mitigating factors with regard to Mr. Baskerville, we have five

7   aggravating factors.

8        That's not a balancing test, State vs Roth and Hodge

9   tells that the nature and circumstances is certainly the most

10  serious aggravating factor that you must consider, your Honor.

11  I would ask you to consider the seriousness of the offense with

12  regard to sentencing Mr. Baskerville.  This was a serious crime,

13  people could have got injured and there were at least four

14  victims in this case.

15        I would also ask you, your Honor, to weigh heavily,

16  although this alleged homicide conviction is on appeal, this is

17  a homicide conviction, a man was killed, Mr. Baskerville was

18  convicted by a Jury, I think that is an aggravating factor.

19  That prior conviction alone is an aggravating factor, your

20  Honor, which you must take into consideration when sentencing

21  Mr. Baskerville.

22        The State asks that you deter Mr. Baskerville, that you

23  protect the people of the State of New Jersey against Mr.

24  Baskerville.  I think it is clear that the aggravating factors

25  clearly and substantially outweigh the mitigating factors.  It's

1    clear that the preponderance-- Strike that, your Honor.  It's

2    clear that the presumptive term of 15 years should be adjusted

3    upward to 20.

4            This is a first degree crime, the State moved for an

5    extended term because the State had a good faith basis to

6    believe that Mr. Baskerville is a persistent offender and that

7    Mr. Baskerville should have received an extended term, but for a

8    technicality that he filed an appeal, but the appeal has now

9    been pending for five years, nothing has been done, I don't

10   know, your Honor, if New York authorities are to be blamed, if

11   the system is back-logged or whatever, but Mr. Baskerville, your

12   Honor, is-- Certainly would have qualified for a persistent

13   offender based on the nature of his convictions and the nature

14   of his prior record.

15           It's a serious prior record, he's a violent man, so I

16   would say he received a break in that regard.  But, your Honor,

17   I would ask you to adjust the presumptive upward to 20.  I would

18   submit to the Court that since the aggravating factors clearly

19   outweigh the mitigating factors, there are none, the aggravating

20   factor of hardship on his family, your Honor, he's been

21   incarcerated for years now, he's not even-- He was not, as far

22   as I understand from the PSI, living with his wife.  I do not

23   know the nature of any support that he was giving to her at the

24   time.  It's clear that he was involved with Lisa Polak to some

25   extent, so I don't know what hardship, if any, would be on his

sentence                                    26

1    wife and children and again that is a hardship that all criminal

2    Defendants and their family immure, so I would ask you also

3    sentence Mr. Baskerville to a period of parole ineligibility as

4    well.

5           It's clear the aggravating factors substantially

6    outweigh the mitigating, I would ask your Honor for one half, 10

7    years period of parole ineligibility and, your Honor, I would

8    also ask that this sentence be consecutive to the sentence in

9    New York.

10          We don't know what's going to happen with that sentence

11   in New York and again I do not think it would be fair under

12   State vs Yarbough, your Honor, to give Mr. Baskerville the

13   benefit of the doubt.  This is a separate crime, occurring on a

14   separate date, in a separate state, involving four separate

15   victims, he should not be given a concurrent sentence, it simply

16   does not-- Simply is not a situation which calls for

17   concurrency.  I think that the easiest thing that your Honor

18   will do today is sentence him consecutively.  Finally, your

19   Honor, I would ask for 20 years New Jersey States Prison, 10

20   years without parole.

21          THE COURT:  Thank you.

22          MR. HENDRICKSON:  Judge, I would point out that the

23   pre-sentence investigation report indicates that Mr. Baskerville

24   is married in March of 1991 at the Bergen County Jail annex and,

25   in addition, your Honor, Mr. Baskerville had three outstanding

1   matters, actually four, and was here for those matters.  He was

2   shipped off to New York before they could be completed.  I don't

3   know that he was actually here AOD at that time, but if that's

4   correct he may have very well a ground of appeal on this

5   particular case as not having been disposed of during a prior

6   AOD time.

7          THE COURT:  That's all conjecture.  I mean, that's

8   speculation.

9          MR. HENDRICKSON:  So that, your Honor, in terms of

10  concurrent or consecutive, it's very possible that but for an

11  error that was made several years ago this matter could have

12  been disposed of at that time as well.

13         THE COURT:  With regard to other matters before the

14  Court regarding the Defendant, Mr. Baskerville, there is a

15  motion, interlocutory decree that was submitted by Mr.

16  Baskerville pro se, received by the County Clerk's Office on

17  July 19th and received by my office on August 3, 1993, where he

18  makes a motion for an interlocutory decree, stating that on

19  July-- Basically what he's requesting is that on July 29, 1993,

20  a Juror, Juror number two, in this trial, he states, "seen me in

21  the hallway with four Officers around me and in handcuffs and

22  leg irons and in full view of the Juror.  The said Juror seen me

23  this way just before he went into deliberations."

24         Secondly, he says "that on March 25th, 1993, Mr.

25  Hendrickson", his Lawyer, "filed a motion to have Judge Sullivan

1   remove himself from the case because he made derogatory remarks

2   and showed me, the Defendant, in open court that he was

3   prejudiced against the Defendant right from the start of this

4   case."

5           Third is that again "on June 22, 1993, another motion

6   was filed against Judge Sullivan to step aside for remarks he

7   made about a case that had nothing at all to do with this case

8   at hand.  The Defendant was before Judge Sullivan in January,

9   1988, and was found with a no bill and released.  The Judge kept

10  asking and making derogatory statements and showed clearly in

11  open court that he was and is prejudiced."

12          These are issues that are properly addressed before the

13  Appellate Division.  The motion is hereby denied for any

14  interlocutory appeal.  They're not timely and they're not

15  subject to this Court's ruling.  I made my ruling regarding each

16  one of these issues at the time.  The Defendant's right to have

17  the Appellate Division review those rulings and the reasons I

18  set forth during trial.

19          Now, with regard to another issue, indictment number

20  S-1144-88 is a pending matter before this Court.  Since the

21  Defendant is on AOD, the time of 180 days is running.  The State

22  has made a request that that time be tolled until we set a trial

23  date.  The papers have been submitted on the papers themselves.

24  Without any further ado, the Court hereby grants that motion and

25  holds the time for the AOD to run.

1        In fact, the State has indicated that Mr. Baskerville

2   received-- The State of New Jersey received Mr. Baskerville in

3   New Jersey on January 8th, 1993, and his 180 days technically

4   expired on July 6th, 1993. On July 21 the Defendant was on

5   trial before this Court for another indictment, S-524-88. Trial

6   began on July 1st, 1993, resulted in a guilty verdict on July

7   6th. I'm sorry, resulted in a guilty verdict a couple days

8   later.

9        MR. MUSELLA: July 1st, Judge. The guilty verdict was

10  July 1st.

11       THE COURT: July 1st. We started trial on June 21 and

12  then July 1st was the guilty verdict. On July 6, Defense

13  Counsel, Mr. Albert Hendrickson, was on trial before Judge

14  Arthur Minuskin on an unrelated case, on another case, and was

15  unavailable for trial.

16       On July 12 the State requested the tolling of the AOD,

17  as Defense Attorney was not available for trial. I adjourned

18  the indictment until July 19th, 1993, and then I signed an

19  order, consent order, tolling the time until August 18th, until

20  this particular week, and the Court has been-- Then there was a

21  vacation in between of three weeks.

22       The Court has now reviewed the matter, there are no

23  Jurors available at this time, it's impossible to continue the

24  case, the indictment which involves indictment number S-1144-88,

25  and as soon as the Court has the time available to try that

1   particular case it will set that date. So, therefore, the time

2   for the AOD has been tolled until such time as the Court will

3   set a date, as soon as we have an open date for that particular

4   case.

5          Now, with regard to the sentencing today, Mr.

6   Baskerville, would you please stand. I have reviewed the

7   pre-sentencing report. I have also-- I'll address the one issue

8   that you raise with regard to Mr. Baskerville and Mr. Marcus

9   Ali. I told you from the beginning that their particular case,

10  I understood to be separate and apart.

11         They are not in any considerations in this Court's

12  sentencing at this time nor has it been any consideration by

13  this Court with regard to your trial. That you were named in

14  the same indictment as the particular Mr. Baskerville and Mr.

15  Ali was a choice that the State made. However, each one of

16  these indictments had been severed and they were tried

17  separately.

18         In fact, Mr. Bailey was tried separately in a separate

19  trial, Mr. Ali was tried separately in a separate trial, and

20  Miss Polak, I believe pled guilty. In fact, she testified

21  against you in this particular-- On behalf of the State. And

22  then you were tried separately, all of which was at different

23  times. I have reviewed your aggravating and mitigating factors.

24  You were found guilty by a Jury of armed robbery in the first

25  degree and aggravated assault in the fourth degree and resisting

1    arrest in the fourth degree.

2           The trial, as I reviewed it and presided over it, I

3    find to be a fair trial. Again, that's an issue that certainly

4    can be reviewed by the Appellate Division, but I find that the

5    presentation by the State was fair. There was nothing to

6    prejudice you in any way, my finding.

7           Officer Jackson identified you as the particular

8    individual she saw running from the scene of the purse snatching

9    into her car, she chased you, she chased you around a tree, she

10   had ample opportunity to view you and knew you, she knew you

11   before, that you were known to the Officers. Officer Jackson

12   ID'd you, identified you, the Jury accepted that identification,

13   and found you guilty beyond a reasonable doubt of first degree

14   armed robbery.

15          As I review your past record, your prior criminal

16   record, I find it's extensive. There's 25 arrests since 1978,

17   eight of which have been convictions. There's one pending

18   charge, which I have just made reference to. One of the

19   convictions in the past is a very serious crime from the State

20   of New York of murder and armed robbery and robbery, second

21   degree murder.

22          The sentence has been imposed, 16 years to life. Even

23   without that particular consideration, and it's on appeal, even

24   without that, the Court, even considering the murder charge, I

25   would still find that you are a risk to commit another offense.

1  You have a long history, arrests and involvement with the law,

2  this involved a high speed chase. As the Prosecutor indicated,

3  there's a need to deter you and others from this criminal

4  behavior. Anything but incarceration would send the wrong

5  message to others.

6          And, of course, number eight, the offense that you

7  committed was against a Police Officer while the Police Officers

8  were acting in their duties, in their capacity as Officers

9  exhibiting evidence of their authority and Officer Jackson, of

10 course, was in uniform. Those are the aggravating factors that

11 I find.

12          I look to the mitigating factors and I really find

13 none, Mr. Baskerville. I conclude that the aggravating factors

14 in your case substantially outweigh the mitigating factors and I

15 find it clear and convincing, you are a danger to the public.

16          On the first degree, as I mentioned, I have made a

17 ruling that the State is not entitled to an extended term as a

18 persistent offender because I do not find that you fit the

19 criteria of persistent offender, as I would accept it. It's a

20 discretionary Court-- In this Court and I will not impose an

21 extended term. However, I do find the aggravating factors, as I

22 said, substantially outweigh the mitigating factors and the

23 presumptive term for count five of a first degree murder-- First

24 degree robbery, armed robbery, is 15 years in State's Prison.

25 That's the presumptive term.

1      Since I find that the aggravating factors outweigh the

2   mitigating factors, I will impose the-- Place you in the custody

3   of the Commissioner of Corrections for a period-- In the State

4   of New Jersey for a period of 20 years, the maximum on count

5   five.

6      On count six, the maximum sentence for resisting arrest

7   is 18 months. It's a fourth degree crime and I will impose the

8   max of 18 months on count seven. The maximum sentence for, I

9   guess this is resisting, aggravated assault, which is count six

10  and seven, both of which are 18 months, fourth degrees. I will

11  sentence you to the maximum of 18 months on each.

12     Now, these particular count five, six, and seven

13  sentences shall run concurrent to each other and the entire

14  sentence shall run consecutive to the sentence you are now

15  serving in New York. I will-- $90 Victims of Violent Crimes

16  Compensation.

17     I will evaluate the jail credit you're entitled to, as

18  you presented earlier on and I will investigate what you are

19  entitled to with regard to this particular case and I will give

20  you that. You have a right to appeal this sentence within 45

21  days, if you do not agree with it. If you cannot afford an

22  Attorney for the purposes of appeal you can apply to the Public

23  Defender's Office for assistance. Anything else from the State?

24     MR. NUBELLA: Judge, is it my understanding that

25  there's no period of parole ineligibility.

sentence                                      34

1          THE COURT:  No, I'm not imposing any period of parole

2   ineligibility.  Consecutive to what he's serving in New York.

3   Although my finding is that he substantially outweighs, because

4   of the length of the record, et cetera, but I do not find him to

5   be warranting a parole ineligibility.  I do not find that.

6   Thank you, Gentlemen.

7          MR. BASKERVILLE:  Thank you, Mr. Sullivan.

8          MR. HENDRICKSON:  Thank you, Judge.

9          THE COURT:  Mr. Baskerville, good luck, I'll see you at

10  the next trial, maybe.

11         MR. BASKERVILLE:  Yes.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# C E R T I F I C A T E

I, CHRISTOPHER J. ROSSI, C.S.R., License Number XI01395, an Official Court Reporter in and for the State of New Jersey, do hereby certify the foregoing to be prepared in full compliance with the current Transcript Format for Judicial Proceedings and is a true and accurate transcript of my stenographic notes taken in the above matter to the best of my ability.

*Christ. J. Rossi, CSR XI01395*

Christopher J. Rossi, C.S.R.
Official Court Reporter
Hudson County Courthouse
595 Newark Ave. (room 504)
Jersey City, NJ, 07306
201-795-6707

date: 9/7/95

9/7/95